UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:19-CV-00179-HBB

JEREMIAH VICKERS                                                    PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

MEMORANDUM OPINION
AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Jeremiah Vickers ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered March 2, 2020 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

Plaintiff filed an application for Supplemental Security Income Benefits on November 17, 2016 (Tr. 20, 158-64).   Plaintiff alleges to have become disabled on November 17, 2016, as a result of attention deficit hyperactivity disorder (ADHD), bipolar disorder, manic depression, and posttraumatic stress disorder (PTSD) (Tr. 20, 57, 70, 89, 97).   These claims were initially denied on February 15, 2017,[1] and the denial of the claims were affirmed upon reconsideration on April 19, 2017 (Tr. 20, 66, 82, 89, 97).   Administrative Law Judge Marci P. Eaton ("ALJ") conducted a video hearing from Paducah, KY on August 9, 2018 (Tr. 20, 37-39).   Virtually present at the hearing from Owensboro, KY was Plaintiff and his attorney Sara Martin Diaz (Id.).   During the hearing, Theresa Wolford testified as a vocational expert (Tr. 20, 39, 52-55).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 17, 2016, the alleged onset date (Tr. 22).   At the second step, the ALJ determined Plaintiff has the following severe impairments: depression, anxiety, ADHD, PTSD, and a history of substance abuse in remission (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 23).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but also opined several nonexertional limitations: Plaintiff can understand, remember, carry out and apply simple instruction; maintain attention and concentration to complete routine tasks; he should avoid interaction with the public;

---

1   In the ALJ's report, she notes Plaintiff's initial claim was denied on November 26, 2016—one week after the filing of Plaintiff's application (Tr. 20).   However, review of the initial determination report, the date is actually February 15, 2017 (Tr. 66).   This appears to be an inconsequential error.

he can have task focused interaction with supervisors and coworkers; and he can adapt in routine work setting with minimal change in routine (Tr. 25).   Continuing from the RFC determination, the ALJ found Plaintiff is capable of performing past relevant work as a Laborer (Tr. 30).   After this finding, the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is also able to perform other jobs that exist in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since November 17, 2016, the date the application was filed (Tr. 31).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 157).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case <i>de novo</i>, nor resolve conflicts in evidence, nor decide questions of credibility."   <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964

3

F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.   See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Challenge to Finding No. 3

1.   Arguments of the Parties

Plaintiff argues that the ALJ erred in recognizing Plaintiff's mental health impairments meet the medical listings of Listing 12.04, 12.06, and 12.15 (DN 14 PageID 919).   To substantiate this argument, Plaintiff asserts that he "has had at least 2 years of medical treatment in a mental health setting that is ongoing and that has managed, at times, to diminish the symptoms and signs of his mental disorder.   However, this has still resulted in a 'minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.'" (Id.) (quoting Listing 12.04(c)(2); Listing 12.06(c)(2)).   Further, Plaintiff claims "[i]t was clear error for the ALJ to find paragraph B criteria limitations were moderate in all categories except social functioning, which she found to be in the moderate to marked range.   In each of those categories, the severity of his impairment should have been either marked or extreme" (Id.).

In contrast, Defendant claims that the ALJ conducted an "extensive discussion of the medical evidence" and relies on Sixth Circuit cases articulating courts' reluctance in "impos[ing] a strict articulation standard on the adjudicator at Step Three" (DN 19 PageID 938-39) (referencing Price v. Heckler, 767 F.2d 281, 284 (6th Cir. 1985); Bledsoe v. Barnhart, 165 Fed. Appx. 408, 2006 WL 229795 at *3 (6th Cir. Jan. 31, 2006)).   Defendant acknowledged the ALJ's obligation to discuss the Listings "[i]f the record raises a substantial question as to whether [the claimant] could qualify as disabled under a listing," but then goes on to assert that the ALJ "expressly addressed Listings 12.04, 12.06, and 12.15 in her decision, and found that Plaintiff's impairments did not meet or equal either Listing" (DN 19 PageID 942-43) (quoting Abbott v. Sullivan, 905 F.2d 918, 925 (6th Cir. 1990)) (internal quotations omitted).

When turning to Plaintiff's argument that the ALJ should have found marked or extreme limitations, Defendant broadly asserts that the claims were brought in a perfunctory manner and should be deemed waived (DN 19 PageID 944-45).   This waiver argument was used again in Defendant's argument against Plaintiff's claims of meeting paragraph "C", where Defendant asserts "Plaintiff made no [] showing, and the record shows that the required criteria for listing equivalence was not met (Id. at 945-46) (citation omitted).

2.   Discussion

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 416.920(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. Appx. 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful

activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."   20 C.F.R. § 404.1525(c)(3).   A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled.   *See* 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984).   However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing.   20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. Appx. at 491.   Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment."   20 C.F.R. § 404.1526(a).   "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."   Reynolds v. Comm'r Soc. Sec., 424 F. Appx 411, 415 (6th Cir. 2011).   Additionally, the ALJ looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing.   *See* 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

The severity requirements for Listings 12.04, 12.06, and 12.15 are set forth in paragraphs "B" and "C" of the listing.   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A.   The paragraph "B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "4. *Adapt or manage oneself (paragraph B4)*".   20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4. These four areas of mental functioning are evaluated on the following five-point rating scale:

a. *No limitation (or none)*.  You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b. *Mild limitation*.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. *Moderate limitation*.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. *Marked limitation*.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. *Extreme limitation*.  You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

In the ALJ's determination, she began by noting that obesity does not have a specific medical listing, but instead is evaluated pursuant to SSR 02-1p.[2]  As such, the ALJ "fully considered obesity in the context of the overall record evidence in making [her] decision" but also noted that "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the impairment" and will be evaluated on a case-by-case basis (Tr. 23).

---

2   SSR 02-1p, *"Policy Interpretation Ruling — Titles II and XVI: Evaluation of Obesity"*, was effective at the time the ALJ conducted the hearing and her analysis.   SSR 02-1p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2002-01-di-01.html.   However, since then, SSR 02-1p has been rescinded and replaced by SSR 19-2p, which became effective on May 20, 2019.   SSR 19-2p, *"Titles II and XVI: Evaluating Cases Involving Obesity"*, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2019-02-di-01.html#Q4.   Upon review of SSR 02-1p and SSR 19-2p, the consideration for whether obesity is factored into the "meets" and "equals" determination is largely identical.   Under SSR 02-1p, obesity "meets" the requirements of a listing if the Plaintiff has another impairment that, by itself, meets the requirement of a listing, or if that impairment in combination with obesity meets the requirements of a listing.   SSR 02-1p.   If the functional limitations caused by obesity, alone or in combination with another impairment, may medically equal a listing. SSR 19-2p.   Both SSRs do not specify any specific weight or BMI for these determinations.

Immediately following this statement, the ALJ stated her conclusion that "[t]he severity of [Plaintiff]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria listings 12.04, 12.06, and 12.15" (Id.).   The ALJ began working through the paragraph "B" criteria to determine if Plaintiff's mental impairments result in at least one extreme or two marked limitations (Id.).

A. *Understand, Remember, or Apply Information*

When turning to the first criterium of paragraph "B", the ALJ determined that Plaintiff has a moderate limitation (Id.).   In coming to this conclusion, the ALJ relied upon Plaintiff's responses to a function report stated "he had to be reminded to take his medications and perform certain tasks," but Plaintiff reported "feeling ok[ay] [regarding whether] he can follow both oral and written instructions" (Id.) (citing 204-12, 255-63).   However, Plaintiff also checked the "Understanding," "Memory," and "Following Instruction" underscores when completing the function report, claiming that "[it's] hard to listen to others and often misunderstands them …" (Tr. 210, 261).   In their own function reports regarding Plaintiff, Plaintiff's mother and fiancé both reported Plaintiff had difficulty following instructions (Tr. 23-24) (citing 222-30, 241-49).   Plaintiff's mother checked the underscores for "Understanding," "Memory," and "Following Instructions" (Tr. 228).   In her response, she mentions that Plaintiff "[h]as to be told things over and over, [and] [f]orgets instructions" (Id.).   Plaintiff's fiancé also marked the same three underscores as Plaintiff's mother (Tr. 247).   Plaintiff's fiancé also detailed that Plaintiff "cannot process instructions and is afraid to ask questions.   He forgets everything …" (Id.).   Further, the state agency psychological consultants opined that Plaintiff would have moderate limitations in this category (Tr. 24, 61, 76).

B. *Interact with Others*

As for interacting with others, the ALJ concluded Plaintiff has a moderate to marked limitation (Tr. 24).   The ALJ provided examples of Plaintiff's complaints regarding panic attacks and social anxiety, even when taking medication (Id.) (citing Tr. 679).   While not directly cited in this particular paragraph, the ALJ referenced the function reports completed by Plaintiff, and the ALJ also cited the function reports of Plaintiff's mother and fiancé in the prior category (Tr. 23-24).   As such, the ALJ would consider the Plaintiff's reports, his mother's opinions, and Plaintiff's fiancé's report, in tandem with Plaintiff's hearing testimony.   Plaintiff's function report shows indications of difficulties regarding "Talking," "Hearing," "Understanding," "Following Instructions," and "Getting Along with Others" (Tr. 210, 261).   Plaintiff went on to explain that "[it's] hard to listen to others and often misunderstands them.   No hands on or teaching styles seem to make a difference in remembering …, often jumps from task to task and doesn't return to finish them[.]   Often feels others are out to get him" (Tr. 210).   In Plaintiff's mother's function report, she marked difficulties with "Talking" and "Getting Along with Others," and she also wrote that Plaintiff "is afraid of people and wont [*sic*] talk to them" (Tr. 228).   As for Plaintiff's fiancé, she also marked difficulties with "Talking" and "Getting Along with Others" but mentioned that Plaintiff "has authority issues because he feels he is under attack all the time" (Tr. 247).   The state agency psychological consultants completed their evaluation of the evidence and stated that Plaintiff would have mild limitations for "interact[ing] with others" (Tr. 61, 76).

C. *Concentrate, Persist, or Maintain Pace*

Next, the ALJ evaluated Plaintiff's ability to concentrate, persist, or maintain pace (Tr. 24). At this step, she concluded that Plaintiff has a moderate limitation in this category (Id.).

Plaintiff reported that "he had difficulty concentrating and focusing" (Id.) (citing Tr. 204-12, 255-63), but the ALJ noted Plaintiff's comment that he is no longer taking his ADHD medication—even though he responded well to the medication (Id.) (citing Tr. 526-31).   The ALJ also referenced recent treatment notes where Plaintiff displayed normal mood and did not have any complaints of decreased concentration (Id.) (citing Tr. 844-46).   The ALJ, again, did not explicitly discuss the function reports by Plaintiff or his mother or fiancé, but the ALJ had considered it in a prior category.   As such, the ALJ would still consider it here.   Plaintiff, in his function report, notes difficulties with "Concentration," "Completing Tasks," and "Following Instructions" (Tr. 210).   Plaintiff went on to explain that he "often jumps from task to task and doesn't return to finish them" (Id.).   Plaintiff's mother also marked difficulties with "Memory," "Concentration," "Completing Tasks," "Following Instructions," and "Understanding" (Tr. 228). His mother also discusses that Plaintiff "has a very short memory.   He can only concentrate [for] a few minutes.   Never finishes anything.   Has to be told things over and over …" (Id.). Plaintiff's fiancé marked the same difficulties as the other reports (Tr. 247).   When turning to the state agency consultants, the reports opine moderate limitation in this category (Tr. 61, 76).

D.   *Adapt or Manage Oneself*

Finally, the ALJ detailed her considerations in finding mild to moderate limitations in this category (Tr. 24).   The ALJ noted that Plaintiff "on his function report indicated that he can handle changes in routine [okay], but he also noted that he does not handle stress well" (Tr. 24) (*see* Tr. 204-12, 255-63).   Drawing from Plaintiff's testimony, the ALJ recounted that "much of [Plaintiff's] stress stems from interaction with others" but "is able to adapt to changes and manage psychologically based symptoms" (Tr. 24).   However, the ALJ noted that when Plaintiff "had to

11

change physicians, he had difficulty adapting to the new providers and ultimately stopped attending his appointments" (<u>Id.</u>).   Plaintiff reported having to be told to bathe or brush his teeth (Tr. 207-08).   He reported minimal problems in taking care of his personal needs, but his fiancé may assist in making sure he is alright (Tr. 252).   When turning to the function report by Plaintiff's mother, she noted that other people give Plaintiff his clothes to wear, Plaintiff forgets to bathe or eat, appointments to visit doctors are made for him, but Plaintiff can shave and care for his hair independently (Tr. 224).   Plaintiff's fiancé paints a similar picture that Plaintiff needs to be told to bathe and brush his teeth, can eat but does not cook for himself, does not use appropriate soaps when care for his hair, and Plaintiff can dress himself but needs to be told if his clothes are appropriate (Tr. 243).   The state agency psychological consultants stated that Plaintiff had a moderate limitation in this category—a more stringent limitation than found by the ALJ (Tr. 24, 61, 76).

When looking at the paragraph "C" criteria, the ALJ opined:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied.   In this case, the evidence fails to establish the presence of the "paragraph C" criteria.   The record does not establish that the claimant has medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of his mental disorder.   Nor does the record establish that he has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

(Tr. 25).   Plaintiff argues that the criteria under paragraph "C" are met but states this claim absent additional facts or law (DN 14 PageID 919).   No further argument supported this assertion.   It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort

at developed argumentation, are deemed waived." <u>United States v. Layne</u>, 192 F.3d 556, 566 (6th Cir.1999) (quoting <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* <u>Brindley v. McCullen</u>, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); <u>Rice v. Comm'r of Soc. Sec.</u>, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).   As such, Plaintiff's argument about the paragraph "C" criteria are waived.

Plaintiff further argues that "[t]he evidence of record more than supports this claim and the severity of these conditions clearly meets the criteria found in listings 12.04, Depressive, bipolar and related disorders, 12.06 Anxiety and Obsessive-Compulsive Disorder, and 12.15 Trauma and Stressor-related Disorders" (DN 14 PageID 919) (underlining omitted).   Plaintiff relied upon his prior years of "medical treatment in a mental health setting" and Plaintiff's own testimony about his inability to control his emotions—drawing his argument from the subsequent challenge to the ALJ's determination discussed *infra*.

Throughout the entirety of Plaintiff's first two arguments, Plaintiff does not assert any law to bolster his argument that the ALJ's determination was improperly based (DN 14 PageID 919-21).   Plaintiff's contentions for the ALJ's purported failure to find the Plaintiff's mental impairments meet the Listings rests primarily upon conclusory statements and minimal support, and Plaintiff's contentions are insufficient to demonstrate that the ALJ's determination was not supported by substantial evidence.   The ALJ's determination relies upon the evidence present in the record, and the ALJ cites sufficient evidence to explain her determination. As such, the ALJ's determination was based on substantial evidence and comports with applicable law.

Challenge to Finding No. 4

1.  Arguments of the Parties

Plaintiff claims that the ALJ erred in determining Plaintiff's RFC because the ALJ's own findings determined marked limitations in social functioning (DN 14 PageID 920-21).   Further, Plaintiff alleges "the ALJ improperly assessed Mr. Vickers' mental health impairments and acted as her own medical expert" (Id. at 920).   Following this claim, Plaintiff bolsters his point by claiming "no consultative examination [was] conducted prior to the hearing and no post-hearing evaluation either, even though counsel requested it" (Id.).   After recounting the ALJ's use of the paragraph "B" criteria, the ALJ's RFC determine, and records of Plaintiff's purported inability to control his emotions, Plaintiff opined that the ALJ's depictions of Plaintiff "is not the picture of a reliable employee that is capable of having ANY type of 'interaction with supervisors and coworkers' as the current RFC suggests" (Id. at 921).

Defendant, in turn, asserts that the ALJ properly relied upon evidence in the record and even took Plaintiff's own subjective complaints into account when concluding moderate to marked limitation in interacting with and relating to others (DN 19 PageID 947).   Defendant further recounts and relies upon Plaintiff's own reports and testimony, the ALJ's observations, and notes from the medical records to conclude that "none of [the] various examining and treating physicians reported findings supporting a conclusion that Plaintiff had limitations that exceeded those in the RFC finding …" (Id. at 948).

2.  Discussion

The residual functional capacity finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 416.945(a),

416.946(c).   The ALJ makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c).   Thus, in making the residual functional capacity finding the ALJ must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.     20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).   While opinions from treating and examining sources are considered on the issue of residual functional capacity, the ALJ is responsible for making that determination.   20 C.F.R. §§ 404.1527(d), 416.927(d).

There is a difference between a medical opinion and a Residual Functional Capacity Assessment prepared by the ALJ.   The medical opinion is submitted by a medical source and expresses impairment-related functional limitations.     20 C.F.R. §§ 404.1513(a)(2), 404.1527(a)(1), 416.913(a)(2), 416.927(a)(1).   By contrast, the Residual Functional Capacity Assessment is the ALJ's ultimate finding of what the claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.

Here, the ALJ found that Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember, carry out and apply simple instruction; maintain attention and concentration to complete routine tasks; he should avoid interaction with the public; he can have task focused interaction with supervisors and coworkers; and he can adapt in routine work setting with minimal change in routine.

(Tr. 25).   In coming to this conclusion, the ALJ reviewed a slew of evidence in the record and discussed plaintiff's mental impairments, especially when reviewing Plaintiff's social

functioning.[3]  When reviewing Plaintiff's ability to work with coworkers, supervisors, and the public, the ALJ noted that Plaintiff "reported anxiety when he is around crowds[;] [h]e reported that he felt he was a danger to others when he got upset" (Tr. 27) (citing 504-37).   Plaintiff also noted that "he was working 'a ton' to keep up with his obligations" (Id.).   The ALJ recounted Dr. Harmon's notes that Plaintiff reported "he cannot deal with the stressors of other people around him" (Id.) (citing 672-85).   After the Klonopin was added to help with the social anxiety, Plaintiff reported being less stressed, but the anxiety was still present (Tr. 27-28) (citing 686-91).   While not in this Finding, the ALJ previously noted that when Plaintiff "had to change physicians, he had difficulty adapting to the new providers and ultimately stopped attending his appointments" (Tr. 24).   The ALJ even noted that "[t]he evidence also shows that [Plaintiff] was sometimes regarded as irritable ..." (Tr. 28).

Turning to the state agency psychological consultants, the regulations provide that ALJs "will consider" the medical findings of State agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation."   20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).   When the opinion of a non-examining State Agency medical/psychological advisor is consistent with the record, the opinion represents substantial evidence to support the ALJ's decision.  *See* Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1082-83 (6th Cir. 1987) (per curiam).   In the present case, the state agency psychological consultants were

---

3   Plaintiff has limited his claim of error by the ALJ's determination to only considering the limitation imposed by social functioning (DN PageID 920).

awarded great weight by the ALJ, even where they opined that Plaintiff has moderate limitation in interacting and relating with others (Tr. 29, 61, 76).

As this Court previously noted in its discussion of Plaintiff's last argument, "[t]hroughout the entirety of Plaintiff's first two arguments, Plaintiff does not assert any law to bolster his argument that the ALJ's determination was improperly based" (*supra* pp. 13) (DN 14 PageID 919-21).   Plaintiff continues to proclaim conclusory statements, absent any law, that Plaintiff "is not the picture of a reliable employee that is capable of having [any] type of interaction with supervisors and coworkers as the current RFC suggests" (DN 14 PageID 921) (quotations omitted). The only facts that Plaintiff cites to, in an attempt to undermine the ALJ's determination, are records regarding his physical injuries due to anger outbursts, panicking, and treatment notes with a singular quote that Plaintiff "feels like he is out of control more often than not …" (Id.) (citing Tr. 529; referencing Tr. 49-51, 402, 526-27).

However, citing five pages from the record, in comparison to the testimony, records, and information cited and considered by the ALJ, does not meet a level of contention that shows the ALJ's determination was not supported by substantial evidence.   Even then, the ALJ noted the Plaintiff sometimes being labelled as irritable.   The ALJ went so far as to include the testimony and reports by Plaintiff to substantiate her determination that the social functioning component of the mental RFC is more restrictive than recommended by the state agency psychological consultants.   As such, the ALJ's determination is supported by substantial evidence, and Plaintiff's second argument fails.

As for Plaintiff's argument about a lack of post-hearing evaluation, Plaintiff's counsel's purported "request" was instead an ambiguous, uncertain, and conditional forewarning of the

potential to request an examination: "I <u>was going</u> to request <u>potentially</u>, <u>based on</u> the progression of this hearing and what your thoughts were, that there <u>may be</u> the need for a post hearing evaluation from a mental health specialist" (Tr. 41) (emphasis added).   Almost immediately after, Plaintiff's counsel stated Plaintiff's "mental health conditions are the primary basis for requesting a favorable, but we do realize that a post hearing evaluation <u>may help</u> flesh out some details that may be lacking …" (Tr. 42) (emphasis added).   No other request for an evaluation was present in the hearing transcript (*see* Tr. 37-56).   Plaintiff's counsel's second "request" also appears to be hinting at the idea of requesting a post-hearing evaluation, but no explicit request was made. Therefore, Plaintiff's assertions about the absence of a post-hearing evaluation lacks merit.

Challenge to ALJ's Determination of "Controlling Weight"

1.   Arguments of the Parties

Plaintiff final argument is that the ALJ erred by failing to give "controlling weight" to the opinion of Plaintiff's treating provider (DN 14 PageID 921-22).   "The ALJ dismissed [a] statement [regarding Plaintiff's claim for disability] from Dr. Harmon as conclusory and actually afforded it no weight, but should have considered it as evidence and weighed it more heavily since Dr. Harmon was [Plaintiff's] treating physician at the time" (<u>Id.</u>) (emphasis omitted).

Defendant's response focuses on the brevity and lack of medical opinion in Dr. Harmon's statement (DN 19 PageID 948-50).   Defendant asserts that the ALJ properly awarded no weight to Dr. Harmon's statement because it "is a general statement without any specific limitations" (<u>Id.</u> at 949 (quoting Tr. 29)), and the statement "is not a medical opinion, having no relation to the nature and severity of [Plaintiff's] impairment, or [what] [Plaintiff] can still do despite his impairments or restrictions" (<u>Id.</u> at 950).

18

2.  Discussion

The entirety of the note that Plaintiff wishes to give controlling weight states, "I am Jeremiah's current psychiatrist.   He has been severely ill and struggling since 2006, was struggling some time since childhood.   I believe he should refile for disability" (Tr. 538).   The ALJ noted that she gave "no weight to the statement of David Harmon, D.O." because it "is a general statement without any specific limitations" (Tr. 29).

As Plaintiff filed his applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require ALJs to evaluate every medical opinion in the record.   20 C.F.R. §§ 404.1527(c); 416,927(c).[4]   "Treating-source opinions must be given controlling weight if two conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in [the] case record.   Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)) (internal quotations omitted).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case.   Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)).   "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'"   Cole, 661 F.3d at 937.   The Sixth Circuit has indicated it will not hesitate to remand

---

4    Effective March 26, 2012, the numbering of the treating physician rules changed.   Section 416.927(d)(2) became 416.927(c)(2), and section 404.1527(d)(2) became 404.1527(c)(2).

when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.   Id. at 939 (citations omitted).   However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a *treating source's opinion is so patently deficient that the Commissioner could not possibly credit it*; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

Cole, 661 F.3d at 940 (emphasis added) (citations omitted); *see also* White v. Comm'r of Soc. Sec., 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."); Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (ALJs are "not bound by conclusory statements of doctors").

The present case is a precise example of the first situation for harmless error.   Dr. Harmon's statement does not state any limitations, does not convey any evidence or medical opinions, does not discuss Plaintiff in any light (Tr. 538).   Instead, it broadly claims that Plaintiff should refile for disability (Id.).   This note is deficient in every sense of the word when it comes to claiming that it is a medical opinion.   As such, the ALJ's decision to give no weight to Dr. Harmon's statement, if there is any error present, is considered harmless.   Therefore, Plaintiff's final argument fails.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record

20

that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

October 30, 2020

Copies:        Counsel of Record